IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **STAT IMAGING, LLC,**<br><br>                      **Plaintiff,**<br><br>        v.<br><br>**`, INC., P.C. and FRANCISCAN ALLIANCE, INC., d/b/a FRANCISCAN MEDIAL SPECIALISTS,**<br><br>                      **Defendants.** | **Case No. 13 C 1921**<br><br>**Hon. Harry D. Leinenweber** |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Medical Specialists, Inc., P.C.'s (hereinafter, "Medical Specialists") Motion to Dismiss for Lack of Personal Jurisdiction under Federal Rule of Civil Procedure 12(b)(2). [ECF No. 12.] For the reasons stated herein, the Motion is denied.

## I.    FACTUAL BACKGROUND

Plaintiff Stat Imaging, LLC ("Stat Imaging" or "Plaintiff"), an Illinois limited liability company consisting of radiologists that is domiciled in Illinois, filed this action alleging breach of contract against Defendants Medical Specialists and Franciscan Alliance Inc. d/b/a Franciscan Medical Specialists ("Franciscan"), (collectively, "Defendants"). Medical Specialists is an Indiana professional corporation that operates medical imaging equipment ("Imaging Equipment") and performs diagnostic studies

("Scans/Studies") at its facilities in Indiana. Its principal place of business is in Munster, Indiana. Defendant Franciscan is an Indiana corporation that operates a healthcare organization and maintains its principal place of business in Mishawaka, Indiana. Franciscan also has offices in Illinois. In the Complaint, Plaintiff alleges that Franciscan acquired Medical Specialists in October 2012, and assumed the name Franciscan Medical Specialists.

Plaintiff's Complaint alleges that Defendants terminated an agreement between the parties prematurely. Plaintiff claims that its predecessor, Radiology Imaging Solution, Ltd. ("RIS"), entered into an agreement with Medical Specialists on April 5, 2006 ("the Agreement"). Pursuant to the Agreement, RIS agreed to perform, "the reading, interpretation, and evaluation of Scans/Studies ("Radiology Services")," for Medical Specialists. Compl. Ex. 1 ¶ 2, ECF No. 1-1 at PageID# 8. According to Plaintiff, on August 14, 2006, RIS assigned all of its rights and obligations under the Agreement to Stat Imaging with the consent of Medical Specialists. The first amendment to the Agreement, which recites the assignment, states that the amendment will be governed by Indiana law. *Id.* ¶ 4, ECF No. 1-1 at PageID# 21. Plaintiff claims that following the assignment, it became the exclusive provider of Radiology Services for Medical Specialists, barring three exceptions not applicable to this case.

Pursuant to the Agreement, Medical Specialists, at its own expense, provided to Plaintiff's place of business in Illinois, "all medical, technical, and office supplies necessary or appropriate in connection with the use of Imaging Equipment and the reading, interpretation, and evaluation of the images and patient histories." *Id.* ¶ 8, ECF No. 1-1 at PageID# 9. Moreover, Medical Specialists agreed to "transmit" the Scans/Studies to Plaintiff's place of business in Illinois using its internet T1 line. *See Id.* ¶ 4(a), ECF No. 1-1 at PageID# 8.

Plaintiff explains that its radiologists used the computer systems supplied by Medical Specialists to review Medical Specialists' Scans/Studies. To access the Scans/Studies, the radiologists logged onto Medical Specialists' photo archiving and communications system ("PACS") web portal. PACS is a medical imaging technology that provides storage of and access to images obtained from radiology studies. Once logged onto the web portal, the radiologists clicked on the link of a particular study to view images. By clicking on a link, the radiologists activated a "viewing application" on their computers which "caused the connection to the PACS server in Munster, Indiana, and the downloading of images from the PACS server" to the radiologists' work stations in Illinois. *See* Krohn Aff. at 2, ECF No. 18-1.

Plaintiff alleges that Defendants terminated the Agreement improperly on December 31, 2012, by blocking Plaintiff's access to

its Scans/Studies and further violated the Agreement by allowing another individual to perform the same Radiology Services. Moreover, Plaintiff claims that it did not receive any notification of a material breach to justify termination of the Agreement.

Therefore, Plaintiff alleges breach of contract and claims damages because it no longer receives payments from Defendants for Radiology Services. Furthermore, Plaintiff alleges that Medical Specialists is liable despite any assignment of the Agreement to Franciscan because Plaintiff never agreed to such assignment. Nevertheless, Plaintiff also claims that Franciscan is liable because it either obtained Medical Specialists' obligations under the Agreement by corporate merger; has accepted an assignment of the Agreement; or has used Plaintiff's services "as if the Agreement had been assigned to it." Compl. ¶ 33(c).

On April 5, 2013, Medical Specialists moved to dismiss Plaintiff's Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Medical Specialists is the only Defendant that moved to dismiss, however, as Franciscan filed its Answer on May 6, 2013. [ECF No. 20.]

## II.  **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(2) permits the Court to dismiss a case for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). The Court's decision to grant or deny the motion depends on whether the defendant has sufficient "minimum contacts"

with Illinois such that the Court's "maintenance of the suit would not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Following a Rule 12(b)(2) motion that is based solely on written materials, the plaintiff bears the burden of establishing a *prima facie* case of personal jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2009). Once the defendant submits written materials "in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings" and provide affirmative evidence for jurisdiction. *Id.* at 782-83. Furthermore, the Court resolves any conflict of facts in favor of the plaintiff. *Id.* at 783.

### III. <u>**ANALYSIS**</u>

Medical Specialists argues that its Motion should be granted because it does not maintain sufficient "minimum contacts" with Illinois. When exercising diversity jurisdiction over a non-resident defendant, the Court can only exercise personal jurisdiction if an Illinois state court would exercise such jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997). Illinois' long-arm statute provides that state courts' personal jurisdiction extends to any basis "permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). Thus, the Court only reviews the

motion to dismiss under federal due process principles since there is no clear distinction between the due process requirements of the Illinois Constitution and the Constitution of the United States. *Illinois v. Hemi Group, LLC*, 622 F.3d 754, 757 (7th Cir. 2010).

Under federal due process, sufficient "minimum contacts" are established through two types of jurisdiction: specific and general. *Dupree v. Greyhound Lines, Inc.,* 540 F.Supp.2d 946, 950 (N.D. Ill. 2008). Since the present case "arises out of" Medical Specialists' relationship with an Illinois company, and Plaintiff does not offer evidence for general jurisdiction, the following analysis is limited to the Court's ability to exercise specific jurisdiction over the non-resident Defendant.

For specific jurisdiction to exist, the complaint must "arise out of" or be "related to" the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Moreover, specific jurisdiction requires that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denkla*, 357 U.S. 235, 253 (1958). To exercise specific jurisdiction the Court must determine that the defendant, through its contacts, would have "reasonably anticipate[d] being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Finally, if a court finds sufficient

"minimum contacts" it must further determine whether it would be reasonable to require the defendant to litigate in its forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476-78 (1985).

Medical Specialists argues that Plaintiff's actions leading up to the formation of the Agreement along with the final terms of the Agreement vitiate the Court's specific jurisdiction. Medical Specialists claims that it did not commit any act to avail itself purposefully of the benefits of Illinois law because: (1) Plaintiff's predecessor solicited the Agreement in Indiana; (2) the Agreement was negotiated in Indiana and; (3) the Agreement was to be performed in Indiana under the protection of Indiana laws. Plaintiff disputes that the Agreement was negotiated entirely in Indiana and submits evidence of email exchanges with Medical Specialists' Chicago-based lawyers.

Although Medical Specialists' arguments regarding the negotiation of the Agreement and its Indiana choice-of-law provision are relevant to a federal due process analysis, they are not dispositive. *See Innovative Garage Door Co. v. High Ranking Domains*, *LLC,* 981 N.E.2d 488, 499 (Ill. App. Ct. 2012); *Commercial Coin Laundry Sys. v. Loon Invs., LLC*, 871 N.E.2d 898, 905 (Ill. App. Ct. 2007). Under federal due process, courts consider where the performance of the contract was contemplated to determine whether the defendant availed itself purposefully of the forum state. *Innovative,* 981 N.E.2d at 500. Courts therefore consider

factors such as "prior negotiations and contemplated consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether a defendant "purposefully established minimum contacts within the forum." *Burger King*, 471 U.S. at 479. Since location of the initiation and negotiation of a contract does not defeat a finding of personal jurisdiction where "minimum contacts" exist, the Court analyzes whether the terms of the parties' Agreement and the parties' course of dealing established sufficient "minimum contacts."

In the present case, both the terms of the parties' Agreement and the majority of the parties' course of dealing involved Medical Specialists' use of its PACS web portal and PACS server. Therefore, the Court analyzes Medical Specialists' maintenance of these systems to determine whether Medical Specialists established "minimum contacts" with Illinois purposefully.

The federal and state courts' power to exercise personal jurisdiction over a non-resident defendant due to its maintenance of a website "is a developing area of jurisprudence." *Larochelle v. Allamian*, 836 N.E.2d 176, 184 (Ill. App. Ct. 2005). There are two theories often applied to internet jurisdiction cases. *Innovative*, 981 N.E.2d at 495. Some courts analyze whether the defendant "targets" the forum state. *Innovative*, 981 N.E.2d at 495, 497; *see also, ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002). Under this analysis,

courts consider the degree to which the defendant directs its internet activity at the state and whether a cause of action may arise from such activity. *ALS Scan*, 293 F.3d at 714. Other courts apply the *Zippo* analysis, which considers the "interactivity and commercial nature of a website" to determine if a defendant has purposefully availed itself of the forum state. *Zippo Mf. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997). Under the *Zippo* analysis the mere maintenance of a passive website that does not promote any interaction is insufficient to confer jurisdiction. *Innovative*, 981 N.E.2d at 496.

While the Seventh Circuit does not recognize either test as controlling, *Hemi Group*, 622 F.3d at 758-59, in *be2, LLC v. Ivanov*, the Seventh Circuit established that mere interactivity of a website is insufficient to confer jurisdiction and required that "a defendant must in some way target the forum state's market" for a court to exercise jurisdiction. *be2, LLC v. Ivanov*, 642 F.3d. 555, 558-59 (7th Cir. 2011). Medical Specialists' contacts are sufficient to confer jurisdiction under these standards.

Medical Specialists "targeted" Illinois through its PACS web portal which facilitated the agreed "transmission" of Scans/Studies from Medical Specialists' PACS server to computers at Plaintiff's place of business in Illinois. *See* Compl. Ex. 1 ¶ 4(a), ECF No. 1-1 at PageID# 8; Krohn Aff. at 2-3, ECF No. 18-1. Medical Specialists argues that it did not direct its activities at

Illinois because Plaintiff's radiologists' interactions with its PACS web portal and PACS server constituted unilateral activity by the Plaintiff. Medical Specialists asserts that since the radiologists were retrieving the Scans/Studies from the PACS server, which is located in Indiana, that it was the Plaintiff "reaching into" Indiana rather than the Medical Specialists "reaching into" Illinois to "transmit" the Scan/Studies. *See* Def.'s Reply Supp. Mot. Dismiss, at 1, 2. However, similar to the Seventh Circuit's finding in *Illinois v. Hemi Group, LLC*, the Court finds this argument unpersuasive. *Hemi Group*, 622 F.3d at 758.

In *Hemi Group*, the Seventh Circuit found the defendant's characterization of an Illinois customer's purchase of cigarettes on its website as a unilateral activity misleading, because it ignored Hemi Group's own actions which had led to and followed the sales. *Id.* The court reasoned that Hemi Group directed its activities at Illinois because it developed interactive websites through which customers could purchase cigarettes, and because it shipped cigarettes to Illinois. *Id.*

Similarly, in the present case, Medical Specialists' argument is unpersuasive because it ignores its prior actions leading up to Plaintiff's access to the PACS web portal and PACS server. Under the parties' Agreement, Medical Specialists agreed to "transmit" the Scans/Studies to Plaintiff's place of business in Illinois. Furthermore, pursuant to the Agreement, Medical Specialists sent

personnel to Plaintiff's place of business in Illinois to set up the computer systems necessary for Plaintiff to access its PACS web portal and to receive the transmissions of the Scans/Studies from Medical Specialists' PACS server.

Medical Specialists argues that it set up the computer systems in Illinois merely out of convenience for Plaintiff so that it would not have to travel to Indiana. Convenient or not, Medical Specialists sent its personnel to Plaintiff's place of business in Illinois specifically to set up the computer systems central to the services contemplated in the Agreement. Indeed, Medical Specialists agreed to supply Plaintiff with all supplies "necessary or in connection with Plaintiff's use of the Imaging Equipment and the reading, interpretation and evaluations of the images and patient histories." Compl. Ex. 1 ¶ 8, ECF No. 1-1 at PageID# 9. Therefore, Medical Specialists "targeted" Illinois through its internet-related activities. *Innovative*, 981 N.E.2d at 495.

Furthermore, Medical Specialists maintained a website with sufficient interactivity to confer jurisdiction under the *Zippo* analysis. Medical Specialists' PACS web portal is more than a merely "passive" website. *Zippo*, 952 F.Supp. at 1124. To access the Scans/Studies, Plaintiff's radiologists had to log onto Medical Specialists' PACS web portal. Once on the web portal, the radiologists had to click on the link of a particular study to view an image. By clicking on a study, radiologists activated a

"viewing application" which connected to the PACS server and downloaded images from the server to the radiologists' work stations in Illinois. Krohn Aff. at 2, ECF No. 18-1.

Medical Specialists' actions are therefore similar to the "doing business over the internet" standard discussed in *Zippo*. *Zippo*, 952 F.Supp. at 1125. In *Zippo*, Pennsylvania residents entered into contracts with the defendant, a California corporation that operated an internet news service, by filling out an on-line application and paying for the service online or by telephone. *Id.* at 1121. After processing these applications, the defendant would assign passwords to the subscribers so that they could "view and/or download Internet newsgroup messages" that were stored on the defendant's server in California. *Id.* The court found that the defendant availed itself purposefully of doing business in Pennsylvania. *Id.* at 1126. The court reasoned that the defendant's actions demonstrated that it had entered into contracts with residents of a foreign jurisdiction "that involved the knowing and repeated transmission of computer files over the internet." *Id.* at 1124-26. Similarly in the present case, Medical Specialists entered into a contract with Plaintiff which involved "the knowing and repeated transmission" of Scans/Studies over the internet. *See, id.* at 1124. As such, Medical Specialities' internet activity in relation to the Agreement is sufficient to confer personal jurisdiction under the analyses described in *Zippo* and *ALS Scan.*

In addition to the Medical Specialities' internet activity, the Court finds specific jurisdiction due to the nature of the parties' contractual relationship. Pursuant to the parties' Agreement, Medical Specialities provided Plaintiff with access to its Scans/Studies on its PACS server for more than six (6) years. Such a longstanding contractual relationship is additional grounds for finding jurisdiction.

The Court finds *Innovative Garage Door Co. v. High Ranking Domains* instructive. *Innovative Garage Door Co. v. High Ranking Domains,* 981 N.E.2d 488 (Ill. App. Ct. 2012). In *Innovative*, the plaintiff, an Illinois garage door service company, sued the defendant, an internet lead-generation company, for an alleged breach of contract. *Id.* at 492-93. In finding personal jurisdiction over the defendant, the Illinois Appellate Court considered the defendant's website in the aggregate with the parties' contractual relationship. *Id.* at 499. In addition to finding that the defendant's website was directed at Illinois, the court noted that the nature of the parties' contractual relationship was sufficient to confer personal jurisdiction. *Id.* The court reasoned that the parties' contractual relationship was its most significant Illinois contact due to its substantial nature, the generation of 150 leads per year for 3 1/2 years, and its duration; it was a long-term, open ended contract. *Id.* at 498-99.

Like the court in *Innovative*, this Court does not rely solely on Medical Specialists' internet-related activity to exercise specific jurisdiction. Similar to the defendant in *Innovative*, Medical Specialists entered into an ongoing contract voluntarily with Plaintiff which required Medical Specialists to transmit all Scans/Studies to Plaintiff in Illinois. Furthermore, although the parties' contract was not open ended, the contract between the parties had a significant duration. The parties maintained their Agreement for more than six years and agreed to continue the Agreement automatically unless a material breach occurred, or a party notified the other of its intent not to renew. Under such a substantial and ongoing Agreement, Medical Specialists reasonably should have anticipated being haled to court in Illinois for breach of contract. *See World-Wide Volkswagen Corp.*, 444 U.S. at 297.

Therefore, Medical Specialists' internet activity directed at Illinois taken in the aggregate with its contractual relationship with Plaintiff constitutes sufficient "minimum contacts" with Illinois. However, although Medical Specialists has sufficient "minimum contacts," the Court must further consider whether requiring Medical Specialists to litigate in Illinois would "offend the traditional notions of fair play and substantial justice." *Innovative*, 981 N.E.2d at 502. To determine whether it is reasonable for Medical Specialists to be required to litigate in Illinois, the Court considers "the burden on the defendant to

litigate in the forum, the forum's interest in adjudicating the dispute, the plaintiff's interest in convenient and effective relief, and the interstate judicial system's interest in the most efficient resolution of a controversy." *Innovative*, 981 N.E.2d at 502. Medical Specialists has not offered any information to defeat jurisdiction on this basis. Moreover, Illinois has a strong interest in providing remedies to injured residents. *Id.* Therefore, the Court concludes that requiring Medical Specialists to litigate in Illinois does not offend "the traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, Defendant Medical Specialists' Motion to Dismiss [ECF. No. 12] is denied.

**IT IS SO ORDERED.**

      Harry D. Leinenweber, Judge
      United States District Court

Date: July 22, 2013